We'll start with our first case set for argument today, Grimes v. Phillips, case number 21-56353, and we'll hear from Mr. Ford. Thank you, Your Honors. Patrick Ford on behalf of the appellant, Christopher Grimes. I'd like to reserve three minutes, if I may, for rebuttal, and may it please the Court. The issue that we present this morning is whether the admission of the appellant's statements to the Perkins agent made after an invocation of the right to counsel violated the Fifth Amendment and whether the state court was unreasonable in finding there was no violation. It's certainly our position that the issue was governed by Edwards v. Arizona, where the Supreme Court told us that there is to be no more questioning once a suspect invokes his right to counsel. The issue was complicated by the fact that there was a Perkins operation involved, which means the court in Perkins held, in Illinois v. Perkins, held that Miranda-advised suits are not required when the police put a suspect in a cell with an inmate because that kind of questioning doesn't resemble the type of coercive police-dominated atmosphere that you'd have in a normal police interrogation. There have been state courts that have found Orozco is the primary case in California, which has said that even after an invocation of counsel, statements to a Perkins agent don't violate the Fifth Amendment, and I'd like to challenge that holding and make four statements, if I may. The first is that Perkins is certainly a fine case with a reasonable holding. Well, counsel, can I interrupt you for a second? Sure. Since we're reviewing this under the AEDPA deferential standard, it seems as if the case, as you were describing, is a confluence of some Edwards factors and some Perkins factors, and the state court decision reflected that there isn't any clearly established Supreme Court authority on this confluence of factors. Doesn't that make the state's decision outside of the unreasonableness factor? I don't think so, Your Honor. Why? We believe that this is a straight Edwards issue, that Edwards is a bright-line rule without exception, and once somebody invokes, then there is to be no more questioning, and this is a straight Edwards issue. Like I said, it's a little bit complicated intellectually by the fact that there was a Perkins agent involved. But that's the complicating factor is that he did invoke, but the auspices in which he was being questioned was an undercover agent in a jail cell and not in a custodial interrogation room, and Edwards doesn't speak to that type of circumstance. In that sense, Perkins is a little more apt, no? Right, right. So let me just say maybe it's best answered by looking at Orozco, the state court. Perkins didn't involve an invocation, whereas the Orozco case did, and so maybe it's best to look at it that way. And there's a difference. In Orozco, they said, well, as the court suggests, that there is no kind of police-dominated, coercive atmosphere, and for that reason, Perkins should apply. But our position is first that Edwards controls, and that any time that there's any questioning, that that's a violation of the Fifth Amendment. But setting that aside, we have a better question. Our case is better than the previous cases. It's better than Orozco, certainly better than Perkins, because in our case, after the appellant invoked, the police continued the interrogation. So they continued a Miranda violative interrogation, which was coercive. This was in the police-dominated atmosphere of a traditional interrogation, and it was only after they got the appellant talking, right? He started talking, and so obviously it was coercive. The coercion comes when you take somebody who was not interested in talking, as this man invoked his right initially, and then they do things to get him talking, and they got him talking. Then he realized that he'd been tricked. The coercion worked, and then they put him in the cell with the Perkins agent to finish him off, so to speak. So the case is different from the normal cases that Your Honor has brought up. I grant you that. My concern, though, is that under AEDPA, we're looking at this from a legal standpoint. What does the clearly established law say, and whether the state court decision is an unreasonable application of it? If the state court is saying, and I tend to think that's right, that there is no clearly established Supreme Court authority on this particular issue that Edwards isn't controlling because there's enough difference with it, then it's hard to see how we would overcome an AEDPA standard of review. Right. Your Honor, I'd say, and it's only because I'm either naive or not very bright, but to me this is the easiest and this is the clearest example of the Supreme Court holding on point. With Edwards, it says, and it's been decided that there are no exceptions, that it's a bright-line rule, and all questioning must stop, period. Can I ask you about, because it is AEDPA, so it has to be clearly established from the Supreme Court, but sometimes I suppose it's helpful if the lower court has interpreted the Supreme Court that way. You mentioned that there were some state court precedents that were not helpful to you. Correct. Are there any state or federal lower, below the Supreme Court level, precedents that are more on point than Perkins or Edwards in the sense that they involve somebody who has invoked their Miranda rights, invoked their right to counsel like this, and then had a confidential person in a jail cell question them? Are there any cases that go your way that are state court or federal courts of appeals? Most recently, within the last couple of weeks, there was a dissent in a California case. There was a what? There was a dissent in a California case, which I think laid it out pretty nicely, but the answer is that I don't know that there is a case that helps us. I'm guessing that that's one of the reasons why the court took this case, and we're appreciative that it did. But keep in mind, there is a Supreme Court statement that is directly on point, right? So the ruling of Perkins was that Miranda requirements are not necessary, but the only person, one of the members of the court, Justice Brennan, said in a concurrence, not in a dissent, but in a concurrence, reminded people that, hey, in the event that we should find a situation where the appellant invokes his right to counsel, the rule that we are stating today does not apply. That would be a Fifth Amendment violation. Counsel responded, and some of the courts have noted that that's dicta, but it's a U.S. Supreme Court statement that's directly on point, and this is an opportunity for a court to say that that's, and factually and logically, it's correct, and especially it's correct here. Counsel suggests that, well, keep in mind Miranda is concerned with coercion and not deception, and that the typical Perkins case is about deception. But here we've got coercion that preceded the deception. That puts it in a different category than any of the cases that you're talking about. Remind me, were those statements excluded, the ones that followed the Miranda invocation? I forgot what happened with those statements. So the state court made an express finding that there was Miranda violative, that there was coercive interrogation after the appellant invoked, and that's what separates this case. So there are no cases, Justice Van Dyke, that hold for the facts that we have here, which is that there is coercion and then deception, and so we think that that's different from, this is a unique case, and for that reason we would ask the court to find two things, that a statement made to a Perkins agent after invocation of counsel violates the Fifth Amendment, but if you're not willing to hold that, then at least hold that a statement made to a Perkins agent after invocation of counsel that followed coercive police activity at the very least, that that violates the Fifth Amendment, and I'll reserve my time. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the Court. Deputy Attorney General Herb Taddeff on behalf of the respondent. As Petitioner essentially concedes in his reply brief, there is no Supreme Court case that squarely addresses the issue here. The only Supreme Court case that has addressed conversations between suspects and undercover agents is Perkins, which held that it does not implicate the concerns underlying Miranda. That is because such statements are freely given and not the product of coercion. Because Perkins is the only Supreme Court case that deals with these conversations between suspects and undercover informants, the California Court of Appeals' decision rejecting the Miranda claim was reasonable. Counsel, what about the argument that Perkins did not involve a preexisting Miranda invocation or Miranda violation as the state court found? You know, we are bound by what's clearly established, but we can extrapolate from what the Supreme Court says and does as well. Why does that put us in a different context, as counsel suggests? Well, first, as the California Court of Appeals noted in its opinion, there are a number of courts that have considered the issue and concluded that even if there was a prior Miranda invocation, Perkins still applies. And the California Court of Appeals cited cases both in California and in other states. And under the AEDPA, if reasonable minds can disagree, then the claim fails. Also, I think that given the language in Perkins, Perkins explained that these sorts of conversations do not implicate the concerns underlying Miranda. So that implies that even if there is a prior Miranda violation, that does not mean that subsequent statements under these circumstances would be inadmissible. Perkins explains that Miranda is really concerned with coercion and official police interrogation. And in this case, there was a Miranda invocation and there was a violation, and the state court acknowledged that. But then it went on and looked at the later statements, the statements to the undercover informant, and said those are different. Like Perkins explained, these were voluntary. These were freely given. Under the circumstances of this conversation, the suspect was speaking very casually. It was clear he was not coerced or threatened. In fact, looking at the transcript of the exchange with the informant, it's the suspect himself who actually initiates the conversation about the crime. He tells the undercover informant, hey, they're trying to get me for murder. And then he says, I don't think the charges are going to stick. It's a he said, she said. So there was no interrogation here within the meaning of Miranda. So I think it's perfectly reasonable for a state court to conclude that Perkins still applies, even if there's a prior Miranda invocation. Let me ask you the question that Judge Van Dyke asked your friend on the other side. Are there any court decisions that have concluded that a prior invocation of Miranda would be a Fifth Amendment violation? I believe that the state court's opinion in citing lots of cases that said there wouldn't be, may have cited a but see with the case that found there would be. But, again, the fact that the cases, you know, this is an AEDPA case, and that's first and foremost here. And the fact that there could be cases going both ways shows that there's no clearly established precedent. So the decision, you know, can't be one that is wrong under the AEDPA. I think as far as Edwards, again, Edwards concerned official police interrogation. Once a suspect invokes his Miranda rights, the police cannot continue interrogating him. But, again, Perkins explains that there's a difference between official interrogation and statements that are given unknowingly. And Perkins quoted Miranda, which stated itself that any statement given freely and voluntarily without any compelling influences is, of course, admissible in evidence. There were no compelling influences in the statement given to the undercover agent. As far as counsel's suggestion that it was sort of a continuation from coercion during the interrogation to the statements later, I would point out that there was about an eight-hour gap between the police interrogation of Petitioner and then having him put, placed in the jail cell. So, and once he was there, again, it was clear that this undercover agent wasn't grilling him for more answers or continuing the interrogation. The suspect was simply put in a circumstance where he could freely express, you know, what he wanted to say. And he did, in fact, start speaking about the crime without the undercover agent even eliciting a lot of these questions. I take it from your arguments here, do you think there could be circumstances in which some follow-up interrogation in a jail cell might be coercive for purposes of the Fifth Amendment, but that's not this case? I'm sure there are circumstances that could theoretically arise to that case where they would be, depending on the context of the undercover agent. I think it's important to remember that Perkins says that coercion is in the eyes of the suspect. So I suppose if the suspect starts to believe that this person is trying to get information from him and suspects he might be a police agent, we certainly cross the line and there can be issues there. But again, this is an interesting question that has not been addressed by the Supreme Court, and I believe that's the bottom line here under the AEDPA. If the Supreme Court has not squarely addressed the issue and provided a clear answer, then there's no relief available under the AEDPA. And the state court here was certainly reasonable and cited many other state cases that have come out the same way. And again, fair-minded jurists can disagree, and that's why the claim fails under the AEDPA. Thank you very much. Thank you, counsel. Do you have some time for a rebuttal? No, thanks. I'll be brief, Your Honors. The case here involves questioning after the invocation of the right to counsel, and Edward specifically told us there may be no questioning after the invocation of the right to counsel. That's our case. Perkins answers a very different question as to whether Miranda requirements are required. Miranda advice is required when a suspect is placed in a cell with an undercover agent. That's different from the question we face here of whether, after someone invokes their right to counsel, they may be questioned by an agent in the jail. Justice Sanchez asked whether there can be coercive questioning in a jail, and this is outside the record, but we certainly know from local scandals and so forth that the police have set up Perkins agents that are Mexican mafia types, that their very purpose is to exact statements from these agents, from these suspects, for fear they tell them what they want to hear, not because it's true, but because they feel like they need to make these statements in order to stay safe. This is the evolution of Perkins, and so that certainly is a factor. On the final point, there was no interrogation in the cell, and in Perkins they say the opposite. In Perkins at 496 U.S. at pages 297 and 299, it says that the suspect was the subject of interrogation in the jail. And so it's not that they don't see it as interrogation, it's they see it as a different type of interrogation that lacks the coercive nature of other interrogation. But we had that coercive interrogation before they dropped him in. You can't coerce somebody, get him to the point that he's talking, and then drop him into a cell to finish him off and say, hey, there was nothing coercive in that situation. I mean, that's beyond deceit, and it's beyond the Constitution, unless the court has any further questions. I'll submit. Thank you, counsel. Thank you to both counsel for your arguments in this case. The case is now submitted.
judges: NELSON, VANDYKE, SANCHEZ